Clifford G. ANTCLIFF, Appellant–Defendant,

v.

STATE of Indiana, Appellee–Plaintiff.

No. 41A01–9610–CR–328.

Court of Appeals of Indiana.

June 19, 1997.

---

. Paula M. Sauer, Danville, for Appellant–Defendant.

Jeffrey A. Midisett, Attorney General, Katherine A. Modesitt, Deputy Attorney General, Indianapolis, for Appellee–Plaintiff.

**OPINION**

BAKER, Judge.

On April 15, 1996, appellant-defendant Clifford G. Antcliff pled guilty to Racketeering,[1] a Class C felony, and four counts of Theft,[2] all Class D felonies. He now appeals his sentence, raising the following issues for our review: (1) whether the trial court violated the terms of his plea agreement by ordering him to serve his period of probation on home detention; (2) whether the trial court's order requiring him to serve all four years of his suspended sentence on home detention exceeded the statutory limit for home detention; and (3) whether the trial court erred in ordering him to pay restitution without first inquiring into his ability to pay.

---

1. IND.CODE § 35–45–6–2.

2. IND.CODE § 35–43–4–2.

## FACTS

On June 2, 1995, Antcliff was charged with one count of racketeering, a Class C felony, one count of Forgery,[3] a Class C felony, and seventeen counts of theft, all class D felonies, as a result of his business dealings as an attorney in Johnson County. On April 15, 1996, Antcliff pled guilty to the racketeering charge and four counts of theft in exchange for the dismissal of the remaining charges. In pertinent part, the plea agreement provided as follows:

> The State further agrees that at the time of acceptance of the guilty plea and Defendant's sentencing, this plea agreement calls for the Defendant to receive a sentence on Count I of eight (8) years with the Court to determine what portion of said sentence shall be executed, provided that, no portion of the sentence shall be executed in excess of six (6) years. On Count II, the Defendant will receive a sentence of two (2) years with all time suspended. Count II will run consecutive to Count I. On Counts VII, X and XIII, the Defendant will receive a sentence of three years each ... [which] shall be concurrent with each other and concurrent to Count I.... Accordingly, this plea calls for a ten (10) year sentence, with the Court to determine what portion of said sentence shall be executed, with a maximum cap of six (6) years executed.
>
> No fine will be imposed, and costs and terms of probation, including restitution under the counts for which a guilty plea is accepted, will be left to the Court's discretion.

Record at 293.

Following a sentencing hearing and pursuant to the plea agreement, Antcliff was sentenced to a total of ten years imprisonment, with four years suspended and to be served on probation. Additionally, as conditions of his probation, the trial court ordered Antcliff to pay restitution of $40,052.26, perform 2400 hours of community service and serve all four years of his probation on home detention. This appeal followed.

3. IND.CODE § 35–43–5–2.

## DISCUSSION AND DECISION

### I. Violation of Plea Agreement

Antcliff first contends that the trial court violated his plea agreement by ordering him to serve the suspended portion of his sentence on home detention. Specifically, he argues that home detention is a form of imprisonment, which, pursuant to the plea agreement, was limited to a maximum term of six years. Because the trial court had already ordered him to serve six years of his sentence in prison, Antcliff argues that the order for home detention improperly extended his period of imprisonment. Alternatively, he contends that the trial court was prohibited from ordering home detention because it constitutes a "substantial obligation of a punitive nature" which was not specified in the plea agreement.

Under IND.CODE § 35–35–3–3(e), a trial court is bound by the terms of a plea agreement which it accepts. Once a court accepts a plea agreement, therefore, it is obliged to impose the sentence recommended in the agreement. *Gipperich v. State*, 658 N.E.2d 946, 949 (Ind.Ct.App.1995), *trans. denied*. In imposing the sentence, the court possesses only that degree of discretion provided in the plea agreement. *Pannarale v. State*, 638 N.E.2d 1247, 1248 (Ind.1994).

Here, the plea agreement provides that Antcliff's maximum executed sentence cannot exceed six years. However, the agreement also states that the terms of Antcliff's probation will be left to the trial court's discretion. Under IND.CODE § 35–38–2–2.3(a)(15), a trial court has the discretion to place a defendant on home detention as a condition of probation.

Despite this statutory provision, Antcliff contends that the trial court was still precluded from placing him on home detention under the provisions of plea agreement because home detention constitutes a form of imprisonment. In support of his contention, Antcliff relies on our supreme court's decision in *Capes v. State*, 634 N.E.2d 1334 (Ind. 1994), in which the court held that a person placed on home detention prior to trial was

"imprisoned awaiting trial" for purposes of accruing credit time. *Id.* at 1335. Specifically, the supreme court noted that an individual received credit time, pursuant to IND. CODE 35–50–6–2(a), if he was imprisoned for a crime or confined awaiting trial. *Capes,* 634 N.E.2d at 1335. The supreme court then went on to note that IND.CODE § 35–38–2.6–6, the community corrections statute, allowed individuals assigned to a community corrections program to receive credit time. *Id.* Thus, an individual assigned to a community corrections program was imprisoned or confined for purposes of the credit time statute. Because the requirements of the community corrections program, which included monitoring the individual's location and residing at home, were nearly identical to the requirements of home detention, the court concluded that individuals on pre-trial home detention were also entitled to credit time and, thus, were confined awaiting trial. *Id.*

As we recently explained in *Franklin v. State,* 679 N.E.2d 510 (Ind.Ct.App.1997), however, the legislature amended the community corrections statute shortly after the supreme court's decision in *Capes* and denied credit time to post-conviction home detainees. 679 N.E.2d at 512–13. Therefore, we concluded the supreme court's decision that pre-trial home detention constitutes confinement for purposes of accruing credit time "is now without statutory foundation." *Id.* We also explained that the purposes of the credit time statute, which are to encourage inmates of penal institutions to behave well while confined, improve morale and maintain order, were not furthered by awarding credit time for home detention. 679 N.E.2d at 511–12. As a result, we concluded that home detention did not constitute confinement and, therefore, a person placed on home detention was not entitled to credit time. 679 N.E.2d at 511–12, 512–13.

■ Similarly, we find that the trial court did not imprison Antcliff by placing him on home detention in the present case. As we have repeatedly stated, probation is "a matter of grace and a conditional liberty that is a favor, not a right." *Johnson v. State,* 659 N.E.2d 194, 198 (Ind.Ct.App.1995). Additionally, we note that this court has previous-

ly rejected the argument that home detention is equivalent to incarceration in prison. For example, in *Barton v. State,* 598 N.E.2d 623, 624 (Ind.Ct.App.1992), we stated that unlike confinement in jail, "[h]ome detention allows defendants to live at home, work or seek employment, receive medical treatments, go to school, and attend church services." Considering that the plea agreement in the present case allowed the trial court to set the terms of Antcliff's probation, which under Indiana statutory law may include home detention, and the less restrictive nature of home detention as compared to incarceration in prison, we conclude that the trial court was not prohibited, pursuant to the plea agreement, from placing Antcliff on home detention after his release from prison.

■ Antcliff also argues that the trial court erred in ordering home detention because it was not specifically included in the plea agreement. In support of his argument, he relies on our decision in *Disney v. State,* 441 N.E.2d 489, 493–94 (Ind.Ct.App.1982), in which this court held that a trial court erred in ordering the defendant to pay restitution as a condition of probation because the plea agreement did not mention such a requirement. In reaching this decision, we specifically noted that the only condition of probation included in the agreement was that the defendant commit "no other offenses." *Id.* at 491. We then went on to state that "a condition of probation which imposes a substantial obligation of a punitive nature .... must be specified in the plea agreement." *Id.* at 494.

Notwithstanding Antcliff's arguments to the contrary, we do not find *Disney* to be dispositive. Unlike the plea agreement in *Disney,* the plea agreement in the present case specifically provides that the trial court shall have the authority and discretion to establish the terms of probation. As previously mentioned, I.C. § 35–38–2–2.3(a)(15) permits a trial court to require home detention as a condition of probation. Considering that Antcliff expressly agreed to allow the trial court to establish the terms of his probation, we cannot conclude that the trial court erred in ordering home detention even

though it was not specifically listed in the plea agreement.

## II. Statutory Limit for Home Detention

■ Next, Antcliff argues that the trial court erred in ordering him to serve all four years of his suspended sentence on home detention. In particular, he argues that he could only be required to serve a maximum of two and one-half years of home detention under IND.CODE § 35–38–2.5–5. Although the State concedes that the trial court's order exceeds the statutory limit, it argues that Antcliff may be ordered to serve up to three years of home detention.

Under I.C. § 35–38–2.5–5(a) and (b), a trial court may order an offender, as a condition of probation, to serve at least sixty days in home detention, but no more than the minimum term of imprisonment for the crime committed by the offender. In the present case, Antcliff was sentenced to eight years imprisonment, with two years suspended and to be served on home detention, for his conviction of racketeering, a class C felony. Additionally, the trial court placed Antcliff on home detention for another two years as a result of his conviction for theft, a class D felony. Under IND.CODE § 35–50–2–1, the minimum sentence for a class C felony is two years, while the minimum sentence for a class D felony appears to be one year. Thus, it appears at first glance that the trial court had the authority to place Antcliff on home detention for a maximum of three years.

■ As Antcliff correctly asserts, however, IND.CODE § 35–50–2–7(a) provides that the trial court may reduce the presumptive sentence for a D felony of one and one-half years by up to one year if mitigating circumstances are present. Under I.C. § 35–50–2–7(a), therefore, the minimum sentence for a class D felony is effectively six months. Thus, there is an irreconcilable conflict between I.C. § 35–50–2–1 and I.C. § 35–50–2–7(a). Under our rules of statutory construction, when two statutory provisions are repugnant, the most recent statute controls and operates to repeal the former to the extent of the repugnancy. *Althaus v. Evansville Courier Co.,* 615 N.E.2d 441, 444 (Ind. Ct.App.1993). Given the fact that the legislature most recently amended I.C. § 35–50–2–7 to reduce the presumptive sentence for a D felony to one and one-half years while still allowing a one year reduction for mitigating circumstances, we conclude that the legislature intended to shorten the minimum sentence for a D felony to six months. As a result, the maximum period that Antcliff could be placed on home detention for his convictions was two and one-half years. Therefore, the trial court erred in placing Antcliff on home detention for all four years of his suspended sentence.

## III. Restitution

■ Finally, Antcliff contends that the trial court erred in ordering him to pay restitution without inquiring into his ability to pay. Under IND.CODE § 35–38–2–2.3(a)(5), a trial court may require a defendant to "make restitution or reparation to the victim of the crime for damage or injury that was sustained by the victim." When restitution is ordered as a condition of probation, the trial court "shall fix the amount, which may not exceed an amount the person can or will be able to pay, and shall fix the manner of performance." I.C. § 35–38–2–2.3; *Shaffer v. State,* 674 N.E.2d 1, 9 (Ind.Ct.App.1996), *trans. denied.* Although the statute requires the trial court to determine the defendant's ability to pay the amount of restitution ordered, it is not specific as to the form the court must follow in determining the defendant's financial status. *Smith v. State,* 655 N.E.2d 133, 134 (Ind.Ct.App.1995), *trans. denied.* Thus, an order of restitution is a matter within the court's discretion and we will reverse only when an abuse of that discretion occurs. *Id.*

■ Notwithstanding Antcliff's argument to the contrary, the record reveals that the trial court adequately inquired into his ability to pay. Specifically, we note that the presentence report documented Antcliff's employment history and his financial status. In the report, Antcliff stated that he held outstanding judgments against former clients for $30,000 to $40,000, that his firm billed approximately $10,000 to $12,000 per month in accounts receivable and that he believed he could obtain work as a law clerk after he

was released from prison. R. at 140, 141. Additionally, the record reveals that Antcliff stipulated that he owed $40,052.26 to the victims and that he stated he was willing to pay the restitution. R. at 141, 297. Finally, Antcliff testified during the sentencing hearing that, in connection with a related civil case for the recovery of funds he stole, "a great deal of money can be obtained from [his accounts receivable] and from other judgments that I have in my favor that will greatly assist in the return of the monies that were diverted." R. at 429–30. This information was adequate to allow the trial court to make an informed and fair decision as to the amount of restitution to be paid. *See Mitchell v. State*, 559 N.E.2d 313, 315 (Ind.Ct.App.1990) (review of presentence report which contained information on defendant's financial status and employment history was sufficient inquiry into ability to pay), *trans. denied.* The trial court did not err in ordering Antcliff to pay restitution.[4]

### CONCLUSION

In sum, we conclude that the trial court did not violate Antcliff's plea agreement by placing him on home detention and requiring him to pay restitution as a condition of his probation. However, the trial court erred in requiring Antcliff to serve all four years of his probation on home detention. Under I.C. § 35–38–2.5–5, Antcliff's maximum period of home detention is two and one-half years.

Affirmed in part, reversed in part and remanded.

ROBERTSON and BARTEAU, JJ., concur.

---

4. Even had the trial court failed to inquire into Antcliff's ability to pay at the time it ordered restitution, we would not have necessarily found the restitution order to be invalid. As we recently explained in *Garrett v. State*, 680 N.E.2d 1 (Ind.Ct.App.1997), an inquiry into a defendant's ability to pay is essentially meaningless at the time the order is entered. Specifically, we noted that by the time a defendant is required to actually pay the restitution, his or her financial situation could have changed. 680 N.E.2d at 3 n. 2.

As a result, we concluded that "a more meaningful inquiry into a defendant's ability to pay restitution would take place at the time the State seeks to revoke his or her probation because of the defendant's failure to pay." *Id.* at 3 n. 2. Apparently adopting a similar rationale, the trial court in the present case thoughtfully scheduled a review hearing sixty days after Antcliff's release from prison in order determine a restitution payment plan based on Antcliff's employment and financial position at that time. R. at 457.